this morning. Appeal number 21-2287, Sargeant v. Barfield. Herschel, good morning. Good morning. Whenever you're ready. Good morning, Your Honors, and may it please the Court. I'm Andrew Herschel, and I represent the appellant, Roy Sargeant. I'd like to reserve five minutes for rebuttal. The question here is whether the Supreme Court's decisions in Carlson v. Farmer. Under the Supreme Court's decisions in Carlson v. Farmer, federal prisoners can bring Eighth Amendment claims based on deliberate indifference to substantial risk of serious harm. Here, that a low-level prison official failed to protect Mr. Sargeant from attack by other inmates. And the answer is yes. Could we start with Ziegler v. Abbasi to get guidance on this question? Your Honor, I don't think we have to start with Ziegler v. Abbasi because our position is that Ziegler and the cases that followed it changed nothing about the Supreme Court's interpretation of the scope of existing context, and certainly didn't overrule Carlson and Farmer prior cases having to do with the Eighth Amendment deliberate indifference standard for Bivens claims. Is there any indication in that decision that Farmer is included in that Bivens context? I'm sorry, that Farmer is? Yeah, is there any indication that in the Ziegler case that the Farmer case is included in the Bivens context? Your Honor, it is true that in Ziegler and in Hernandez and Egbert, the Court omits Farmer from its lists of Bivens cases when it's talking about them, but I think that actually supports our argument that Farmer is on point here because in Ziegler, Hernandez, and Egbert, the lists specifically identify cases in which the Supreme Court extended Bivens into new context and cases in which the Supreme Court rejected, suggested extensions of Bivens into new context. Of course, our position is that Farmer was neither an extension nor a rejection of an extension. Farmer... Let me ask you this question. When's the last... We go back to Davis and Carlson, what, 1980 or 81? Carlson is in 1980, Your Honor. Okay, 1980, so 43 years ago. In the 43 years, can you identify one time where the U.S. Supreme Court, in a majority opinion, has referred to, has considered Farmer or discussed Farmer in its Bivens line? Yes, Your Honor, I can actually. In Malesko? Yes, sir. Okay, any other time? No. Okay. So, in Malesko, as you were referring to, Your Honor, the court describes the claim before it as a Bivens claim under the Eighth Amendment standard and cites Farmer as having set forth that standard. Of course, the cases that the Supreme Court has been considering over those 43 years have been focused on what constitute new context, and the Supreme Court has exercised caution, of course, when confronted with the concept of extending Bivens into new context. So, I think it makes a lot of sense, actually, that Farmer is not coming up in those cases because Farmer was not an extension, and an extension wasn't on the table in Farmer. I think that's the conclusion we can draw from the unanimous court's decision to remand what they very obviously understood was a Bivens claim. When they say Carlson, what they mean is Carlson and Farmer because Farmer subsumed within Carlson. That's my point, Your Honor, yes. So, considering the scope of Carlson, which I think Farmer tells us a lot about, this case does not arise in a new context at all. It arises in the context that Carlson first established in 1980, and that's the same context that Farmer took place in in 1994, and that context is prison officials' deliberate indifference to substantial risks that the inmates who live at their mercy and in their care will suffer serious harm. And that includes, but is not limited to, attack by other inmates, which is what happened to Mr. Sargent in this case. Isn't that the concern, though, that we're not able to limit the injury? The mechanism of injury in Carlson was medical indifference to an inmate having an asthma attack and not providing what we consider appropriate medical care. If we expand the language the way that you said just now that it's not limited to, isn't that the concern that the Supreme Court has asked the courts to caution against? Well, to be precise, Your Honor, the Supreme Court has cautioned us against extending Bivens into new contexts, and it has explained that we find new contexts where they are meaningfully different from the original cases where the Supreme Court first implied a Bivens remedy. In this case, the appropriate case would be Carlson. And I think everything we know about what constitutes a meaningful difference suggests that the difference between medical treatment and attack by other inmates is not a meaningful difference. I also think that Farmer interprets Carlson that way, and Farmer has not been overruled and is regularly cited and I think controls the outcome here. That's also what the Third Circuit held in its 2018 case, Bistri and Villevey, which they reaffirmed in short of the United States in 2021, that Farmer controls our consideration of the scope of the Carlson context and interprets it to extend to attack by other inmates. And that's exactly- This question is going to seem nitpicky, but I want to go back to one of the things you just said. You said if there's a material difference- A meaningful difference. A meaningful difference. Okay. Are you sure that that's the right metric, though? Because to my eye, in Abbasi, the court says, quote, even a modest extension is still an extension. That's true. The court said that, Your Honor. But the court in Abbasi also very clearly set forth a two-step inquiry in Bivens' cases. And the first step of that inquiry as set forth in Ziegler is that we must consider whether there are meaningful differences. That's the language they use in Ziegler from the original cases in which the Supreme Court implied a remedy. And that meaningful difference language is quoted again in Hernandez, and it's quoted again in Egbert. So I think the Supreme Court has been very clear that meaningful difference is the standard. Of course, it may be the case that a small, what we might sort of objectively in a non-legal context consider a small difference, could be meaningful. In Malesko, the difference that the court found meaningful was the category of defendants. They were suing a private corporation. But that's extremely different from Mr. Sargent's case, which is exactly like Farmer, where a low-level prison official was deliberately indifferent to a substantial risk of which that official was aware, that the plaintiff in this case would be attacked by another inmate. That's very different from Malesko. And I think Farmer clearly signals, and the Third Circuit adopts this reasoning, that the difference between medical care in Carlson and attack by another inmate is not meaningful. I think that's my concern. How can Farmer tell us whether or not a Bivens remedy is available when it never commented on it in the opinion? Well, I think there are conclusions to be drawn from Farmer, even though the question that the court is contending with is about the deliberate indifference standard that should be applied in all Eighth Amendment cases, among them Bivens cases. So can an assumption and an opinion constitute binding law? I think, I would say, Your Honor, that we can infer from the Supreme Court's decision to remand unanimously what they very obviously understood to be a Bivens claim in Farmer. They make multiple references to the fact that a Bivens claim is before them. They could have taken a 1983 case instead to assess the appropriate deliberate indifference standard. But instead, they granted cert on a Bivens claim. By that point in 1994, Your Honor, the Supreme Court had already rejected multiple suggested extensions of Bivens. They did it in 1983. They did it in 1988. And yet, the unanimous court seemed entirely unconcerned in Farmer with the fact that this Bivens claim didn't involve failures of medical treatment. And I think... Would you agree that such cases were essentially routine for decades in the district courts and circuit courts? Yes, I would agree, Your Honor. And I appreciate you... All of us, to be blunt, all of us recognize Supreme Court may very well be on the brink of overruling Bivens entirely. Or limiting it to cases in which plaintiffs are named Bivens. I, you know, I don't want to speak for what the justices are on the brink of doing. I'm not asking you to. I guess what I'm asking you for is your advice about the extent to which we need to add momentum to that movement. Your Honor, as I'm sure you all know, the Supreme Court has very clearly said on multiple occasions in Agostini, in Bossie v. Oklahoma in 2016, that the lower courts should not be in the business of predicting the Supreme Court's future. And that unless the Supreme Court has overruled itself, which it has said it does not do silently, the lower courts are to apply binding law. Of course, they have never overruled Carlson. They have never overruled Farmer. In Egbert last year, they made clear that they have... Together, we retain the existing context. Egbert does not overrule Bivens, Davis, or Carlson. So to the extent that the court is inclined to agree with me that Carlson and Farmer establish a context broader than medical care, those cases are binding on this court and control the outcome. Let me ask you a couple of quick, specific questions about this. Mr. Sargent's filings, in your brief, picks this up. Talk about the difference between active inmates versus programming inmates in the special housing unit. Yes. You know what that refers to? According to Mr. Sargent, Your Honor, active and programming has to do with the extent to which an inmate cooperated with the government in his case. And for Mr. Sargent, that raises concerns about his potential... What's he? Well, it's not in the pleadings, Your Honor. And of course, at this stage, we're supposed to take all of his allegations as true and draw inferences in his favor. But my understanding is that... My best understanding is that active inmates did not cooperate and programming inmates did. So programming inmates, of course, are subject to a severe threat of violence by active inmates. And my other question is, in essence, most of our discussion here has been pretty abstract. And we don't, at least I don't see very many specific allegations about inmate on inmate violence against Mr. Sargent himself, other than having just this general statement, having to battle with inmates about my stay in prison, leading to argument and some fights. Is there anything more specific that I've missed? In the complaint, Your Honor, if you continue reading in that same paragraph, in the final sentence on that page, he says that he was attacked while in handcuffs by one of the inmates with whom he was assigned to live. Besides that, Your Honor, no, you have not missed anything. Okay. So we're dealing with that kind of general level of pleadings at this stage. That's right, Your Honor. But our position is that drawing all inferences in Mr. Sargent's favor and taking these allegations as true, they easily satisfy the standard for deliberate indifference claim, yes. And he connects it, right? He connects it to the defendant as the one that's exposed him to this particular situation for filing the grievance or the complaint. Yes, yes. He's been placed in that circumstance by the defendant. Not only that the defendant was aware of this risk, but that the risk was the motivating reason for the housing assignment. Yes, Your Honor. I see that I... Can I save some time? Yes, yes, please. Okay, very well. Thank you. Good morning, Ms. Munch. May it please the court, counsel. I'd like to touch briefly on the waiver issue to start with. And a nod to Seyzal, it is true that there would be no waiver if the district court failed to recognize an Eighth Amendment claim, and that is not the case here. Appellant's complaint and pleadings do not plausibly allege an Eighth Amendment failure to protect claim. Just like in this court found in Owens v. Baldwin, to the extent there is, as Judge Hamilton recognized a very brief comment in the complaint, this seven-page complaint talks about the context of that all in a retaliation complaint. And if we look at the grievance documents attached to the complaint, there is no mention of the Eighth Amendment complaint in the grievance documents. Is it your position, though, that he has to mention the Eighth Amendment expressly? There needs... No, it is not. But there needs to be... It needs to be plausibly alleged. There needs to be some context associated to those complaints. And frankly, there was no context given here, and that's why the district court did not mention an Eighth Amendment complaint. The allegations in the complaint is that Barfield placed him with cellmates who she knew would attack him. Those are the allegations in the complaint. If the allegations are very broad, I'm sorry, Your Honor. If we construe that liberally, it's fine. If we construe that liberally, why would that not raise as far as an Eighth Amendment claim? There needs to be a bit more to the context there. It's a pro se complaint. Let's not waste time on waiver here, okay? I understand. The issue, however, wasn't raised by as appointed counsel, and the issue wasn't raised in the... District court. I'm sorry? Wasn't raised by as appointed counsel in the district court. In district court, yes. It was following the instructions of Judge Durkin. Let's... Here, if you want to make a record about waiver, go ahead. Okay, thank you. We can move on to the substantive argument, Your Honor. This case does present in a new context. Carlson involved, as Judge Pryor pointed out, that Carlson involved in inmates' complaints of deliberate indifference to an inmate's health through the failure to provide medical care. This case involves cell assignment and prison housing, which is quite a bit different. Carlson involved doctors and nurses making specific recommendations and treatment recommendations to or about a very specific inmate, giving discreet medical advice that could be followed or not followed, as the case was. Here, cell assignments... Mr. Sargent, though, directs his attention and says, it's not about a housing decision, but it's more about indifference to the risk of violence. As they phrase it, it's really about a failure to protect, and even if we termed it as a failure to protect or a failure to recognize a risk of violence, that is different than the Carlson claim. And so, the Bozzi Court said that sometimes we can have even a complaint that talks about the same right at issue, the Eighth Amendment, and we can also have a complaint that talks about the same, perhaps similar mechanism of injury, but they can present in a different context still. And so, that is the case here. Inmate movement considers inmate behavior, inmate medical conditions, mental health conditions, prison staffing, prison space. Yes, there are some differences. Let me ask you, Ms. Munch, how your position would apply to a case in which three guards got together and just beat up a prisoner for no reason. Would that be a new context? That would be a new context, Your Honor. So not actionable at all? There would be a Federal Tort Claims Act available. There would be... Against the government, but not against the individual guard. That's correct, Your Honor. There would be... If we looked at the special factors that counsel hesitation, we can talk about the Federal Tort Claims Act, the remedial measures available, so the Federal Tort Claims Act, the Administrative Remedies Program. Would you defend the Federal Tort Claims Act, the hypothetical claim we're talking about here on discretionary function grounds? I don't know, Your Honor. I wouldn't be confident as a plaintiff's lawyer that you would not. Could you address our decision in Heron, which looks an awful lot like this, and which came after the Malesko opinion identified the concept of contexts for expanding Bivens? What I would say to the... So what I would say to the court is that the court did not have the benefit of the Supreme Court's decision in Egbert, and so did not have the benefit of conducting that two-step analysis that is required and to be decided. Abbasi has also told us that... Has made clear that we can no longer rely on our own prior precedent to recognize a Bivens remedy. We must look specifically at Bivens, Davis, and Carlson and do that two-step analysis. And so the prior decisions would not be precedential here. So you think we have been overruled by the Supreme Court on this? The Ancien Regime is no longer. So yes. Ms. Bunch, let me ask you this question. In Egbert, the court, as you know, in a couple of different places seems to suggest that the two steps, the steps recognized in Abbasi, really collapsed down into one question. And the way the court phrases that question in a couple of places is whether there is any rational reason, even one, to think that Congress is better suited to weigh the costs and benefits of allowing a damage action to proceed. What's the hypothetical where that question would ever be answered in a plaintiff's favor? In an Eighth Amendment context, it would be the Carlson case. Well, sure, because Carl... I mean, until Carlson's overruled, right? Correct. But is there any, can you think of any other scenario where that question could ever be answered in a Bivens plaintiff's favor? Just making one up. I cannot think of one right now. Even in... If that's right, what that has to mean, correct, is a legal matter, just necessarily so, is that any extension of Bivens, unless you have factual identity, the point Judge Hamilton was making earlier, is an empty set as a legal matter. It is truly an empty set, because there's no way you could answer that question that the court in Egbert sets forth twice in a plaintiff's favor. It's just, it's impossible. I can't envision a circumstance right now, but I suppose there is always a possibility. I'll just make an editorial comment that I have never seen opinions from the Supreme Court claiming such levels of judicial modesty and incompetence as in Abbasi, Fernandez, and especially Egbert. Would you agree with me, Ms. Munch, that under Section 1983, virtually all of the major policy decisions have been made by the Supreme Court with respect to what the statute of limitations will be, whether there are defenses of qualified or absolute immunity and to whom they apply when, what kinds of damages are available, when punitive damages are available. In all of those instances, the court has felt competent to make those decisions subject to potential congressional override. That may be the case, Your Honor, but what we have here is the Prison Litigation Reform Act and what we have here is Egbert and the direction of the Supreme Court. No, nobody's talking about refusing to apply the Prison Litigation Reform Act on constitutional grounds. We have the direction from the Supreme Court telling us that our analysis is limited. Let me try a little different angle. In your brief, you described the Third Circuit's decision in Bistrian as an outlier. In what sense do you think it's an outlier? I didn't see any other circuits that had disagreed with it until the Fourth Circuit's recent case. It's an outlier because it did not take into consideration the Egbert analysis. It did not have available to it the Egbert analysis. It also relied on Farmer and both of them sort of presumed really that Bivens was, the cases were Bivens cases. Again, if we go back to the very direct language of the Supreme Court in Egbert, even Hernandez, which came after Bistrian and Farmer, we have to conduct this two-step analysis and try to determine whether there's a meaningful difference in the context of these cases. In this case, in the appellant's case, is meaningfully different from Carlson. If the plaintiff had made these same allegations in a state prisoner context against a state prison counterpart, do you agree that that would state a claim under the Eighth Amendment? I don't know. I guess there's no question about it. I don't think so either. No, I mean, do you understand the question? The question is under 1983, if Sargent's a state inmate, absolutely. There's no question about that. It may. I think the Supreme Court in Belle v. Wolfish recognized rather elaborately the complexities that the prison officials face in the day-to-day management of prisons and the difficulties that are presented here. If we're looking for a case to rise to the top and to suggest to the Supreme Court that this is an Eighth Amendment claim, this would probably not be the case that would do that. Mr. Sargent did not raise the issue in his grievances. He did not exhaust his administrative remedies. And so that is one thing that needs to be done. Is there a theory that he has to exhaust theories in the grievance process that he has to identify a particular amendment? He does not. He should at least have a discussion in his administrative, his grievance documents of that issue. Where does that come from? Where does that look like? The Congress has given to... You're just talking about 1997A, the exhaustion requirement? Yes. Nothing more... That just says exhaust available administrative remedies. It doesn't say... It doesn't involve pleading requirements in grievances? No, we're not talking about... But he doesn't mention... He doesn't raise the issue of the cell assignments at all in his grievance documents. So if we're looking at the availability of alternative manners in which to raise his claim, he has not done so in his grievance. Is that part of your defense in the district court? Or did it just not come up? It did not come up. So it wasn't raised by any counsel. The Eighth Amendment wasn't raised by any counsel until well after the docketing statement, until well after the motion to stay pending the Egbert decision. So once the Egbert decision came out and foreclosed the First Amendment claim, only then was the Eighth Amendment claim raised. If we agree with the connotation that Carlson context, we're limited to the Carlson context. Let's say that those facts arised again today, all right? Would it be proper for the court to take that up seeing that the prisoners have what you've referred to as alternative remedies? Under the Prison Litigation Reform Act, I mean, are we raising the suggestion that if the Carlson context arose again, Bivens would, under those last two steps, would foreclose the court being able to hear them? Well, in the two-step analysis, there has to be a new context to come to the special factors. So if the court were to decide that there was not a new context, then I suspect that we wouldn't get to the special factors analysis. In Carlson, the prisoner suffered an asthma attack. Yes, a very severe asthma attack, yes. And it was fatal, ultimately. Yes. So the prisoner is suffering a heart attack. Different context? Not necessarily. In Carlson, I think if we looked at the context of that medical event, we're looking at physicians that were involved who made specific medical recommendations on treatment. And I think there were medical equipment that was not available that were recommended to the person who was not working. So all that's true with respect to a heart attack? Or maybe an infection in the clinic? That may be a Carlson case. Thank you. You're welcome. If I can conclude? Sure. Yeah. For the reasons stated, we simply ask the court to affirm the district court's dismissal. Thank you. Okay. Very well. Thank you, Ms. Munch. Mr. Herschel, you have a few minutes left here. Thank you, Your Honors. I'd like to make just three points. The first and most important, Your Honor, Judge Hamilton, you mentioned the court's decision in Heron. Heron is extremely similar to this case. It's a Bivens claim by a federal prisoner who suffered an attack. Actually, in Heron, it was an attack. But the prison official was deliberately indifferent to a substantial risk that the prisoner would be seriously harmed. So it's deliberate indifference to prisoner safety. That's from 2016. As Your Honors mentioned, that's with the benefit of the description of the Supreme Court's caution towards incontext and molescule. And that is binding precedent in this circuit. Did the court make a determination in Heron that this was appropriately brought under a Bivens claim? Or was that issue not raised? Your Honor, in Heron, that claim survived to summary judgment. And the question had to do with… Let me ask that question in a different way. Sure. Was there an assumption that there was an appropriate Bivens claim in Heron? That appears to be the case, Your Honor, yes. And that's also true in this court's decision in Dale in 2008. And that's also true in this court's decision in Bogola in 1997. And that was also true just last year in this court's decision in Gooch v. Young. So I think in this circuit, it's very clear that we do not view the difference between medical care and non-medical care claims as meaningfully different. I also think it's worth pointing out perhaps that in Carlson itself, the medical care aspect of the allegations was confined to a footnote. So it doesn't seem that the Supreme Court was particularly concerned with that aspect of Carlson. The Supreme Court described it only as a violation of the Eighth Amendment's prescription against infliction of cruel and unusual punishment. Of course, also in 1991 in Wilson v. Sider, the Supreme Court itself said, quote, we see no significant distinction between claims of inadequate medical treatment and other conditions of confinement claims, which includes failure to protect inmates from threat of attack by other inmates. I think the challenge you have, Mr. — there's no question. You'd much rather be briefing this case in 1990 than you would 2023. There's no doubt about it. It's the more recent precedent. It's Hernandez, Ziegler, Egbert, right, that makes it very difficult for Mr. Sargent. I disagree respectfully, Your Honor, that I agree with the proposition that we would have been better off in 1990. Yes, of course. The question would not even have arisen. That's true. But I think it's important to observe that in Ziegler, Hernandez, and Egbert, the court retains the two-step inquiry. The court retains the meaningful differences standard. And Justice Thomas' description — I'm sorry. Finish your thought. Justice Thomas' description that this two-step inquiry often resolves to a single question I think implies that it does not always resolve to a single question. Fair enough. That question is extremely hard for a plaintiff to answer in her or his favor. I don't disagree, Your Honor. But just to conclude, Carlson and Farmer have not been overruled and are binding on the circuit as to the scope of the Carlson context. Herondale, Bogola, and Gooch, which is just last year, I think reaffirmed that that's the position in the circuit that claims like this are entitled to a bivenced remedy. What's the case from last year, Your Honor? It's Gooch v. Young, Your Honor. It's cited in our opening brief. It has to do principally with failure to exhaust questions. Thank you very much. Okay. Very well. Mr. Herschel, one final question. Did your firm take this on as a pro bono matter? We did, yes. The court very much appreciates your service, the service of your law firm, and that of your colleagues here. Ms. Munch, thanks to you as well. The court will take the appeal under advisement. Thank you, Your Honor. It's a pleasure.